**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

In Re:

MARTIN MELVIN FITERMAN,

Debtor.

BKY No. 99-42393
Adv. No. 99-4159 (NCD)

---

JAMES LEVY; DAVID FURSETZER; and FURLEV SALES AND ASSOCIATES, INC.,

Plaintiffs/Appellees,

v.

MARTIN MELVIN FITERMAN,

Defendant/Appellant.

Civil No. 00-168 (JRT)

**ORDER AFFIRMING THE ORDER OF THE BANKRUPTCY JUDGE**

---

William R. Skolnick and Sean A. Shiff, SKOLNICK & ASSOCIATES, P.A., 4408 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402, for plaintiffs/appellees.

Scott J. Otero-Strouts, OTERO-STROUTS LAW FIRM, 1800 Rand Tower, 527 Marquette Avenue, Minneapolis, MN 55402, for defendant/appellant.

Appellant Martin Melvin Fiterman appeals from the November 15, 1999 determination of the United States Bankruptcy Judge Nancy C. Dreher. The Bankruptcy Judge denied Fiterman's objection to the proof of claim filed against his estate by

FILED SEP 12 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD. SEP 12 2000
DEPUTY CLERK

appellees James Levy, David Fursetzer, and Furlev Sales and Associates, Inc. ("Furlev"). The Bankruptcy Judge further granted appellees' motion for summary judgment, finding that Fiterman's debt to appellees is nondischargeable pursuant to 11 U.S.C. § 523(a)(6). For the reasons that follow, this Court affirms the order of the bankruptcy judge.

## BACKGROUND

Fursetzer and Levy are former shareholders of Furlev, which was dissolved administratively in October 1991. In 1980, more than ten years previous to its dissolution, Furlev brought an action against Fiterman for wrongful interference with contract. The jury awarded damages in favor of Furlev.

At trial, the state court instructed the jury regarding Furlev's prima facie case as follows:

> Under the law, intentional procurement of a breach of contract means any act or conduct which slows, makes more difficult, or prevents performances of the contract committed with intent to cause that result. Intent to cause the breach is essential. If the defendant does not have the intent to procure breach of the contract, his conduct does not subject him to liability even if it has the unintended effect of causing a breach of the contract.

The court also provided the jury with the following instruction regarding punitive damages:

> A willful indifference is indifference that is deliberate and intentional and without regard to the rights of the person who is the subject of the willful indifference.
>
> If you find that defendant's conduct directly caused injury to the plaintiff, and if you find the defendant's conduct was willful or malicious, and if you believe that justice requires it, you may in addition to any other damages which you find the plaintiff is entitled to receive award the plaintiff an

> amount which will serve to punish the defendant and deter others from the commission of like acts.

The jury found that Furlev was entitled to both compensatory and punitive damages, finding specifically that Fiterman showed "a willful indifference to the rights of Furlev." Fiterman appealed the judgment, and the Minnesota Supreme Court ultimately affirmed the judgment on appeal. *See Furlev Sales & Assocs. Inc. v. North American Automotive Warehouse, Inc.*, 325 N.W.2d 20 (Minn. 1982).

Furlev renewed the judgment in February 1991, several months prior to its dissolution. Since that time it has engaged in continuous collection activities without success. These activities include filing numerous requests for discovery and serving Fiterman's employers with at least seventeen garnishment summonses.

In February 1999, Fiterman filed a motion in state court seeking a declaration that Furlev lacked capacity to enforce the judgment against Fiterman because Furlev dissolved in 1991 and was therefore no longer a legal entity. The state court issued an Order on April 5, 1999 denying Fiterman's motion. In reaching this determination, the court quoted § 302A.783 of the Minnesota Statutes, which provides that, "[a]fter a corporation has been dissolved, any of its former officers, directors or shareholders may assert or defend, in the name of the corporation, any claim by or against the corporation." On the basis of that statute, the court held that Levy and Fursezter were asserting a lawful claim in the name of the corporation. The court further noted that Fiterman had failed to object to Furlev's alleged lack of capacity to enforce the judgment in response to twenty-one prior discovery and garnishment attempts.

Fiterman filed a Chapter 7 bankruptcy petition on May 3, 1999, and appellees subsequently filed a claim against the bankruptcy estate. Fiterman objected to their claim on the ground that they lacked capacity to enforce the judgment. The bankruptcy court held that under the *Rooker-Feldman* doctrine, the April 5, 1999 ruling in the state court action barred the court from considering Fiterman's argument. *See In re Fiterman*, No. 00-168, 1999 WL 1044811, at *3 (Bankr. D. Minn. Nov. 15, 1999). The court accordingly overruled Fiterman's objection.

The bankruptcy court simultaneously considered appellees' summary judgment motion alleging that the debt is nondischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(6). The court noted that under that section, a debt will be excepted from discharge only if the judgment creditor can prove as separate elements that the injury caused by the judgment debtor was both willful and malicious. Citing the instructions provided to the jury in the underlying state court action and the jury's explicit findings in its special verdict, the court held that the separate issues of whether Fiterman's conduct was willful and malicious had already been decided in that proceeding. Having found that the issues before the court and the issues decided in the prior state court action are identical, the bankruptcy court further determined that Fiterman was collaterally estopped from contesting them. The court accordingly granted appellees' motion for summary judgment.

## ANALYSIS

On appeal from a bankruptcy court proceeding, this Court reviews the bankruptcy court's legal conclusions *de novo* and its factual findings under a clearly erroneous standard. *See Gourley v. Usery*, 123 F.3d 1089, 1093 (8th Cir. 1997).

Fiterman raises two issues on appeal: 1) whether the *Rooker-Feldman* doctrine bars his objection that Furlev's claim against him is unenforceable because it no longer exists as a corporate entity and 2) whether he is collaterally estopped from arguing that the conduct from which the state court judgment arises was not malicious.

### I. *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine provides that federal courts lack appellate jurisdiction to review state court decisions. *See Rooker v. Fidelity Trust Co.*, 253 U.S. 413, 416 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983). Impermissible appellate review occurs whenever federal courts below the Supreme Court level consider claims that are inextricably intertwined with those addressed in a prior state court proceeding. *See Snider v. City of Excelsior Springs*, 154 F.3d 809, 811 (8th Cir. 1998). A federal claim is deemed to be "inextricably intertwined" with a state claim when granting the requested relief would "effectively reverse the state court decision or void its holding." *Id.*

In this case the state court considered what appears to be precisely the same issue raised in federal court, specifically, whether Furlev's claim was rendered unenforceable by its administrative dissolution. Nevertheless, Fiterman cites *Cochrane v. Tudor Oaks*

*Ltd. Partnership*, 124 F.3d 978, 982-83 (8th Cir. 1997), for the proposition that the objection he raises in this bankruptcy proceeding raises an issue that is distinct from the issues decided by the state court in its April 5, 1999 decision. *Cochrane* involved similar procedural facts. There, as in this case, shareholders of a dissolved corporation filed a complaint in order to prevent a judgment held by the corporation from being discharged in bankruptcy. *See id.* at 981. In a separate case, a state court previously held that the shareholders had the right, after the corporation dissolved, to continue the action in which the underlying state court judgment was rendered. *See id.* at 980-81. The Eighth Circuit held that the doctrine of collateral estoppel did not apply when, in the bankruptcy proceeding, the debtor challenged the corporation's capacity to file its bankruptcy complaint on the ground that it had dissolved. *See id.* at 982. The court perceived a distinction between the state court's prior holding that the creditor did not lack "the capacity **to continue pursuing** the underlying state court litigation" after it dissolved, and the debtor's challenge in bankruptcy court on the ground that the creditor lacked capacity, **after its dissolution**, "to bring an [independent] adversary proceeding to avoid the discharge of a debt in bankruptcy court." (emphasis added). *Id.*

*Cochrane* is distinguishable from the case at bar. In *Cochrane,* the underlying state court determination was narrower than the determination made by the state court in this case. There, the state court held that shareholders could continue an ongoing action on behalf of the dissolved corporation when the action was begun prior to the dissolution. In the subsequent bankruptcy suit, the court was forced to address whether the shareholders could bring an entirely new action on behalf of the corporation after its

dissolution. Here, the procedural posture is the same, however, the state court's holding is broader. Unlike the state court in *Cochrane*, the state court in this case did not render its decision based on the right of corporate officers to "wind-up" any ongoing action or affairs. Rather, it based its determination on Minn. Stat. § 302A.783 which provides that, "[a]fter a corporation is dissolved, any of its former officers, directors or shareholders may assert . . . any claim by or against the corporation." Thus, the state court in this case clearly determined that corporate officers are entitled to bring an entirely new and independent action on behalf of the dissolved corporation. In contrast, the state court in *Cochrane* merely determined that corporate officers could continue and wind up what was already ongoing.

The bankruptcy court properly applied the *Rooker-Feldman* doctrine in this case. Fiterman asks this Court to review precisely the same issue already reviewed and decided in the state court's April 5, 1999 order. The claims are "inextricably intertwined" because this Court would reverse or render void the state court's prior determination should this Court decide that appellees cannot maintain an independent suit on behalf of Furlev. Nevertheless, Fiterman claims that *Rooker-Feldman* does not apply because the state court decided only that Fursetzer and Levy had the right *to assert* the state court judgment on Furlev's behalf. The state court did not, according to Fiterman, decide the separate and distinct issue of whether appellees have the right *to enforce* the judgment. Fiterman's reading of the state court's April 5, 1999 order is erroneous. The court plainly denied Fiterman's motion for an order that plaintiffs lacked capacity to enforce the judgment. Thus, since the state court previously considered the same issue now before

the bankruptcy court, namely whether plaintiffs can enforce Furlev's judgment, the bankruptcy court correctly applied the *Rooker-Feldman* doctrine in this case.

Even assuming that the *Rooker-Feldman* doctrine does not bar this court from reviewing the merits of Fiterman's claim, it is evident from Minn. Stat. § 302A. 783 that Fursetzer and Levy are entitled to enforce the state court judgment on behalf of Furlev. Once again, this statute provides that "after a corporation is dissolved, any of its former officers, directors or shareholders may assert . . . any claim by or against the corporation." The plain language of this statute makes it unambiguously clear that shareholders like Levy and Fursetzer are empowered to assert rights on behalf of dissolved corporations. In sum, this Court holds that the bankruptcy court properly applied the *Rooker-Feldman* doctrine. Alternatively, even if *Rooker-Feldman* does not apply, appellees have the proper capacity to sue on behalf of Furlev pursuant to Minn Stat. § 302A.783.

## II. Collateral Estoppel

The bankruptcy court held that Fiterman was collaterally estopped from claiming that the debt was nondischargeable as defined by 11 U.S.C. § 523(a)(6) of the Bankruptcy Code. Section 523(a)(6) excepts from discharge "any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6) (1994). To satisfy this provision, the creditor must prove as separate elements that the injury was **both** willful and malicious. *Fischer v Scarborough*, 171 F.3d 638, 641 (8th Cir. 1999) (emphasis added). The bankruptcy court found that the

jury's findings in the state court lawsuit for tortious interference with contract established both elements of § 523(a)(6) and accordingly applied the doctrine of collateral estoppel to Fiterman's nondischargeability claim.

On appeal, Fiterman concedes that the jury's determination was sufficient to establish the willfulness element of § 523(a)(6). He argues, however, that the bankruptcy court erred in holding that the malice element was included in the jury's findings. Fiterman further argues that since the state court judgment did not include a finding of malice, the doctrine of collateral estoppel is inapplicable. A party is collaterally estopped by a prior court action when the following elements are met: 1) the issue sought to be precluded is the same as that involved in the prior action; 2) there was a final judgment on the merits 3) the estopped party was a party or in privity with a party to the prior adjudication and 4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue. *See Care Inst. Inc. v. County of Ramsey*, 575 N.W.2d 734, 737 (Minn. 1998). Fiterman focuses his argument on the first of the four prongs, claiming that the issue of "maliciousness" was neither identical to nor necessarily included within the state court action.

Malice under § 523(a)(6) is defined as an act that is "targeted at the creditor . . . at least in the sense that the conduct is certain or almost certain to cause . . . harm." *In re Long*, 774 F.2d 875, 880-81 (8th Cir. 1985). *In re Miera*, 926 F.2d 741 (8th Cir. 1991), confirms that the bankruptcy court properly held that the malice element was sufficiently established by the jury's findings in the underlying state court case. In *Miera,* a court reporter sued a state district court judge for civil battery claiming that the judge kissed

him on the mouth without his consent. *See id.* at 742. The jury found in favor of the plaintiff, awarding him both compensatory and punitive damages. *See id.* at 743. In reaching its determination, the jury found that the defendant showed "willful indifference" to the rights of plaintiff. *Id.* A subsequent bankruptcy proceeding ensued in which the question at issue was whether the debtor/defendant acted with malice as defined by § 523(a)(6). *See id.* There, as here, the bankruptcy court concluded that the judgment in the underlying state court action contained an implicit finding of malice. *See id.* Since both elements of § 523(a)(6) were established by the state court action,[1] the bankruptcy court held that the debtor was collaterally estopped from raising his nondischargeability claim. *See id.* at 744. The Eighth Circuit affirmed, concluding that the debtor's intentional tort of battery was done maliciously because the facts established that debtor targeted creditor and that debtor proceeded to kiss creditor knowing his advances were unwanted and were substantially certain to injure him. *See id.* at 744-45.

As in *Miera*, there is adequate evidence in the case at bar to support a finding of malice. Fursetzer and Levy were the targets of Fiterman's tortious interference as evidenced by the jury's determination that Fiterman intended to interfere with their contract with North American. Since North American agreed to interfere with the contract, Fursetzer and Levy were the only other parties to whom the intentional interference was directed. It is also clear that Fiterman knew that his conduct was substantially certain to injure appellees. At the time of the interference, Fiterman was

[1] As in this case, the parties agreed that the willfulness element of § 523(a)(6) was established by the jury's findings in the underlying state court action, thus leaving only the issue of malice to be decided by the court.

well aware of the employment contract between Furlev and North American, and, as a licensed attorney, he knew that it was unlawful to interfere with their contract and that doing so would cause appellees to suffer financial harm. Nevertheless, Fiterman proceeded to deprive appellees of the benefit of their contract, first by refusing to honor the settlement agreement between Furlev and North American and then by refusing to allow appellees to perform under the contract. This evidence more than satisfies the malice standard of § 523(a)(6).

Fiterman's reliance on *In re Nielson* is misplaced, largely due to Fiterman's misreading of that case. Nos. 96-47257, 97-414, 1998 WL 386384 (Bankr. D. Minn. July 9, 1998). There, the bankruptcy court declined to apply the doctrine of collateral estoppel to the debtor's claim because, although there was sufficient evidence of malice, the evidence did not support a finding of willfulness. *See id.* at *6. Here, the willfulness element is conceded thus making *Nielson* inapplicable to the case at bar.

Fiterman's reliance on *Kawaauhau v. Geiger*, 523 U.S. 57 (1998), is similarly inapplicable. There, the Court held that debts arising from reckless or negligent acts do not fall within the nondischargeability exception of § 523(a)(6). *See id.* at 64. Thus, § 523(a)(6) is limited to debts arising from intentional torts. Here, Fiterman's conduct was clearly intentional. The state court jury found that Fiterman intentionally interfered with Furlev and North American's employment contract. This determination was ultimately affirmed by the Minnesota Supreme Court. Fiterman's attempt to characterize his conduct as anything less than intentional and thus outside the ambit of § 523(a)(6) borders on the frivolous.

This Court is mindful of the fact that 19 years have passed since the state trial court first entered judgment in appellees' favor. Despite repeated attempts to collect on that judgment, the debt still remains unpaid. Accordingly, this Court holds that the bankruptcy court properly applied the doctrine of collateral estoppel to Fiterman's nondischargeability claim. The evidence more than satisfies the Court that both elements of § 523(a)(6) were necessarily included within the jury's findings in the underlying state court action. Collateral estoppel is particularly appropriate here where litigation of the malice element would be duplicative and would further delay payment of the state court judgment. For these reasons, the bankruptcy court's order declaring appellees' debt excepted from debtor's discharge pursuant to § 523(a)(6) is affirmed.

**ORDER**

Based upon all of the files, records and proceedings herein, the Court **AFFIRMS** the Order of the Bankruptcy Court.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: September 12, 2000
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

**DATE MAILED TO COUNSEL/PRO SE PARTIES:**

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information <u>must</u> be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*